MICHAEL THOMAS and JUANITA THOMAS, Plaintiffs–Appellants, v. FRANKLIN PANG, E. N. NAGAO, LTD., and FIRST CONSTRUCTION ASSOCIATES, INC., Defendants–Appellees, and JOHN DOES 1–10, DOE PARTNERSHIPS, CORPORATIONS and/or OTHER ENTITIES 1–10, Defendants

No. 14325

(CIV. NO. 88–0012–01)

MAY 15, 1991

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED

OPINION OF THE COURT BY WAKATSUKI, J.

On January 6, 1986, in the early morning hours, Michael Thomas and other fire fighters responded to a fire alarm at 425 North King Street in Honolulu. In the course of extinguishing the fire, a portion of the ceiling of the burning building collapsed on Thomas causing a compound fracture of his right arm. Thomas filed suit against Franklin Pang (Pang), E. N. Nagao, Ltd. (Nagao), and First Construction Associates, Inc. (First Construction) alleging generally that their negligence in failing to adequately maintain and secure the building was the proximate cause of his injury.

The circuit court entered summary judgments in favor of all the defendants. The court applied the Fireman's Rule (Rule) and held that no duty was owing to Thomas by the defendants to protect him from the injuries he sustained. We affirm.

## I.

The burning building was owned by Pang. At the time of the fire it was empty and in the process of being demolished. Nagao and First Construction had been contracted for the demolition of the building and subsequent rebuilding.

Fire investigators determined that the fire was probably started maliciously in a waste disposal dumpster inside the building. The building was not secured at the time and the investigators concluded that some unknown persons had entered the building and deliberately set the fire.

## II.

The Rule generally is that a professional fire fighter may not recover damages from a private party for injuries he sustained during the course of putting out a fire even though the private party's negligence may have caused the fire and injury. The overwhelming majority of jurisdictions that have considered the Rule have adopted some permutation of the Rule.[1]  But there is hardly any consistent basis for the adoption of the Rule among jurisdictions.

Historically, the Fireman's Rule was explained in the context of the landowner's liability. The fire fighters were accorded the status of licensees when entering the premises to extinguish a

---

[1] We are aware of only two jurisdictions which have rejected the Fireman's Rule:

Minnesota has legislatively abolished the Fireman's Rule. M.S.A. § 604.06 (1988).

The rule was adopted in Oregon on the basis of assumption of risk. *Spencer v. B.P. John Furniture Corp.*, 255 Or. 259, 467 P.2d 429 (1970). Subsequently, legislative abolition of implied assumption of risk compelled the Oregon Supreme Court to abrogate the Fireman's Rule. *Christensen v. Murphy*, 296 Or. 610, 678 P.2d 1210 (1984).

fire, and therefore, the landowner was under no duty to keep the premises safe at all times for the protection of fire fighters. Difficulty arose when fire fighters were classified as invitees or licensees as they did not fit neatly in either category. Also, that rationale "unfairly limited the rule's application to the landowner/occupant context, thus denying liability for the negligent acts of those individuals, but not for others whose negligent acts injure . . . firemen elsewhere." *Pottenbaum v. Hinds*, 347 N.W.2d 642, 645 (Iowa 1984). The Rule also failed to adequately explain the distinction in treating some public employees, such as postal workers and building inspectors, as invitees, while classifying fire fighters and police officers as licensees. *Flowers v. Rock Creek Terrace, Ltd. Partnership*, 308 Md. 432, 444, 520 A.2d 361, 366–67 (1987). Moreover, as distinctions among invitees, licensees and trespassers were abolished, this rationale could no longer serve as the basis for the Rule. *See England v. Tasker*, 129 N.H. 467, 468–69, 529 A.2d 938, 939 (1987); *Berko v. Freda*, 93 N.J. 81, 85, 459 A.2d 663, 665 (1983); *Giorgi v. Pacific Gas & Elec. Co.*, 266 Cal. 2d 355, 357, 72 Cal. Rptr. 119, 122 (1968). In Hawaii, the common law distinctions between classes of persons in determining a landowner's or occupier's duty of care have been abolished. *Pickard v. City & County*, 51 Haw. 134, 452 P.2d 445 (1969).

### III.

More recently, the Rule has been premised on the doctrine of assumption of risk. The principle of the Rule is that "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby." *Walters v. Sloan*, 142 Cal. Rptr. 152, 155, 571 P.2d 609, 612 (1977); *Flowers v. Sting Sec. Inc.*, 62 Md. App. 116, 134, 488 A.2d 523, 533 (1985).

However, the widespread abolition of contributory negligence as a total bar to recovery by an injured party raised the

question whether the Rule premised on assumption of risk remained viable. In upholding the Rule, a number of courts were compelled to expound on the differences between primary and secondary assumptions of risk.

> The term assumption of risk has led to no little confusion because it is used to refer to at least two different concepts, which largely overlap, have a common cultural background, and often produce the same legal result. But these concepts are nevertheless quite distinct rules involving slightly different policies and different conditions for their application. (1) In its primary sense the plaintiff's assumption of risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it . . . . (2) A plaintiff may also be said to assume a risk created by the defendant's breach of duty towards him, when he deliberately chooses to encounter that risk. Hereafter we shall call this "assumption of risk in the secondary sense."

*Flowers v. Sting Sec., Inc.*, 62 Md. App. at 135, 488 A.2d at 533 (quoting 2 Harper & James, *The Law of Torts* § 21.1, at 1162 (1956)).

When assumption of risk was used as the rationale for the application of the Rule, the term was used in its primary sense, meaning that the defendant owed no duty of care to the fire fighter. *See Kreski v. Modern Wholesale Elec. Supply Co.*, 429 Mich. 347, 363, 415 N.W.2d 178, 185–86 (1987); *Berko v. Freda*, 93 N.J. at 85, 459 A.2d at 665; *Chesapeake & Ohio Ry. v. Crouch*, 208 Va. 602, 607–08, 159 S.E.2d 650, 654 (1968); *Krauth v. Geller*, 31 N.J. 270, 273, 157 A.2d 129, 130 (1960).

Despite the apparent satisfactory resolution of the conflict between the Rule premised on assumption of risk and the modern

doctrine of comparative negligence, the most recent decisions adopting the Rule have based acceptance of the Rule on a public policy analogous, but not identical, to the principle of assumption of risk. *See Winn v. Frasher*, 116 Idaho 500, 777 P.2d 722 (1989); *Kreski v. Modern Wholesale Elec. Supply Co., supra; England v. Tasker, supra; Flowers v. Rock Creek Terrace Ltd. Partnership, supra; Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433 (1985); *Pottenbaum v. Hinds, supra.*

## IV.

We favor those decisions that support the adoption of the Rule based on considerations of public policy. This policy is based on the nature of the service provided by fire fighters and the "relationship between firemen . . . and the public that calls on [them] specifically to confront certain hazards on behalf of the public." *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. at 447, 520 A.2d at 368.

> It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these [fire fighters] are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular . . . . "Fire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole."

*Kreski*, 429 Mich. at 366, 415 N.W.2d at 186–87 (quoting from *Calvert v. Garvey Elevators, Inc.*, 236 Kan. at 576, 694 P.2d at 438).

The very purpose of the fire fighting profession is to confront danger. Fire fighters are hired, trained, and compensated to deal with dangerous situations that are often caused by negligent conduct or acts. "[I]t offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services." *Pottenbaum v. Hinds*, 347 N.W.2d at 645. *Accord Kreski*, 429 Mich. at 366–67, 415 N.W.2d at 187; *Berko v. Freda*, 93 N.J. at 88, 459 A.2d at 666.

Furthermore, although entry onto a person's property by fire fighters is foreseeable, the timing of their entry cannot be predicted, and while fire fighters are performing their duties a landowner or occupier is without authority to control their actions. *Kreski*, 429 Mich. at 368, 415 N.W.2d at 189; *England v. Tasker*, 129 N.H. at 471–72, 529 A.2d at 941; *Chesapeake & Ohio Ry. v. Crouch*, 208 Va. at 608–09, 159 S.E.2d at 655.

We note that the adoption of the Rule does not leave Thomas without any relief. Injuries sustained by him in the course of his employment are compensable under our workers' compensation laws.[2]

We recognize that other public employees to whom workers' compensation benefits are available are not precluded from recovering from private parties for injuries sustained on private property. But this does not relegate fire fighters to second–class citizens, nor does it create an equal protection problem. It is the nature of the fire fighting profession and its relationship to the public which distinguishes fire fighters from most other public employees. Danger is inherent in a fire fighter's work and the fire fighter is trained and paid to encounter hazardous situations unlike the majority of public employees. The public policy considerations which persuaded us to adopt the Rule amply support a classification of fire fighters separate and apart from most public employees.

---

[2] Thomas has received workers' compensation benefits.

*See Winn v. Frasher*, 116 Idaho at 503, 777 P.2d at 725; *Chapman v. Craig*, 431 N.W.2d 770, 772 (Iowa 1988); *Kreski*, 429 Mich. at 367–68, 415 N.W.2d at 187; *Berko v. Freda*, 92 N.J. at 86–87, 459 A.2d at 666.

## V.

Our adoption of the Rule in this case does not conclusively bar all fire fighters injured in the performance of their duties from obtaining compensation from private parties. There have been developed a number of exceptions to the Rule, but we find none of them applicable to this case.

There is no allegation that any of the defendants in this case engaged in wanton or wilful misconduct. *See Mahoney v. Carus Chem. Co.*, 102 N.J. 564, 510 A.2d 4 (1986). Nor is there any allegation that any of the defendants engaged in negligent acts after the arrival of the fire fighters at the scene, or that defendants misled the fire fighters regarding the condition of the building. *See Kreski*, 429 Mich. at 371, 415 N.W.2d at 189; *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. at 448, 520 A.2d at 368–69; *Calvert v. Garvey Elevators, Inc.*, 236 Kan. at 576, 694 P.2d at 438–39; *Pottenbaum v. Hinds*, 347 N.W.2d at 646.

## VI.

Plaintiffs argue that the Rule should not apply where defendants are in violation of a statute. The only statute allegedly violated is HRS § 132–8 which generally requires owners to reasonably safeguard their buildings against fire. That statute does not create a duty where the common–law Rule indicates there is none.

> That compliance with fire safety ordinances will necessarily have the effect of reducing the hazards of fire fighting, however, is no more than incidental to the primary

objective in fire prevention and control. The fact is that in the performance of his official function the fireman is a part of rather than an object of fire prevention and control.

*Washington v. Atlantic Richfield Co.*, 66 Ill. 2d 103, 5 Ill. Dec. 143, 361 N.E.2d 282, 285 (1976) (quoting *Buren v. Midwest Indus., Inc.*, 380 S.W.2d 96, 98 (Ky. 1964)).

Plaintiffs also assert that the Rule is not applicable in this case because the building contained a hidden danger, namely a weakened ceiling, which was the cause of Thomas' injury.

We agree with the proposition that

[a]lthough firemen assume the usual risks incident to their entry upon the premises made dangerous by the destructive effect of fire, there is no valid reason why they should be required to assume the extraordinary risk of hidden perils of which they might easily be warned.

*Shypulski v. Waldorf Paper Prods. Co.*, 232 Minn. 394, 401, 45 N.W.2d 549, 553 (1951).

We disagree that a hidden danger existed in this case. Hidden dangers are those unusual hazards which are not normally anticipated and not ordinarily incidental to fire fighting. But, "the potential for structural collapse is an inherent risk of fire fighting, and one which fire fighters are trained to anticipate .... [I]t is common knowledge that burning buildings collapse, and the risk of that occurrence cannot be termed hidden or unanticipated." *Kreski*, 429 Mich. at 374, 415 N.W.2d at 190. *Accord McGee v. Adams Paper & Twine Co.*, 26 A.D.2d 186, 192–93, 271 N.Y.S.2d 698, 708 (1966); *Aravanis v. Eisenberg*, 237 Md. 242, 252, 206 A.2d 148, 153 (1965); *Jackson v. Velveray Corp.*, 82 N.J. Super. 469, 475, 198 A.2d 115, 118 (1964).

Here, there are no exceptional facts or circumstances which would foreclose the applicability of the Fireman's Rule.

Affirmed.

■■■■■■

*Peter Van Name Esser* (*Melvin Y. Agena, Ann S. Isobe* and *Willard J. Peterson* with him on the briefs) for Plaintiffs–Appellants Michael Thomas and Juanita Thomas.

*Thomas Pico* (*Michael M. Payne* on the brief) for Defendant–Appellee E. N. NAGAO, LTD.

*Rhonda A. Nishimura* (*Richard F. Nakamura* with her on the brief of Libkuman, Ventura, Ayabe, Chong & Nishimoto) for Defendant–Appellee Franklin Pang.

*Michele–Lynn Luke* (*Lisa P. Tong* and *Robert P. Richards* on the brief of Reid, Richards & Miyagi, formerly Davis, Reid & Richards) for Defendant–Appellee First Construction Associates, Inc.

## DISSENTING OPINION OF PADGETT, J.

I respectfully dissent.

This case comes before us on an appeal from an order granting summary judgment in favor of the owner of a building, and the contractor who was reconstructing it, and against a fireman injured by a collapsing ceiling while he was attempting to put out a fire in the building.

There is evidence in the record to indicate that the building was untenanted and under reconstruction, that it was in an area where vagrants were known to sleep in such structures, and to build fires in them, that there was a pile of debris left by the construction workers which apparently caught fire, and that the building was unguarded.

Until today, Hawaii had not adopted the so–called "Fireman's Rule" which bars a fireman injured in the course of his duties from bringing suit against the owner of a burning building for the owner's negligence. As the majority opinion clearly indicates, the

courts which have adopted the "Fireman's Rule" have had great difficulty in explaining the legal rationale upon which it rests, and have adopted various explanations to justify the result reached. Moreover, those courts have also riddled the rule with exceptions. When a rule of law is so difficult of explanation that courts adopting it have tried to buttress it with varying, shaky, legal explanations, and have shot it full of exceptions, it is usually because the rule is unjust. That is the case here.

Long ago, when the only premises protected against fire were those owned by dues–paying subscribers, and fire companies were made up of volunteers, there may have been reason for the rule on contract principles. But today, everyone is protected by fire fighters, fire departments are government agencies, and the firemen government employees. A fireman does not assume the risk of being injured in a fire by going on the burning premises. That is his duty, for which he was hired, and once having accepted that employment, he has no choice but to carry out his duties.

Section 132–8 of the Hawaii Revised Statutes (HRS) provides:

> (a) Every owner or other person having charge of or control over any building, structure, or other premises, in this chapter designated "owner," shall construct, keep, and make the building, structure, or other premises, in this chapter designated "building," reasonably safe from loss of life or injury to persons or property by fire, in this chapter designated "fire loss," in view of the type of construction, the use of the building, and all other pertinent circumstances.

> (b) No owner shall permit the occupancy or use of any building which is not reasonably safe from fire loss and no owner shall fail to furnish, provide, and use reasonably adequate protection and safeguards against fire, or fail to adopt and use processes and methods reasonably

adequate to render the building safe from fire loss; and no owner or other person shall fail or neglect to do every other thing reasonably necessary to prevent a fire loss in any building under the owner's or person's charge or control.

The majority says that that statute creates no duty toward the persons who may be injured as a result of its violation, but it is interesting to note that the statute derives from subsections 13 and 14 of § 49 of Act 115 of the Session Laws of 1917 and that Act 115 was entitled:

> To provide an insurance law for the Territory of Hawaii; to regulate the organization and government of insurance companies and insurance business; to provide penalties for the violation of the provisions of this Act; to provide for a fire marshal and to define his duties; and to repeal all existing laws relating to insurance.

That Act, in defining the kinds of insurance available, made a distinction between insurance for property damages caused by fire and insurance for personal accident and disability.

Let us make no mistake about what this case really involves. It involves the liability insurance policies of those in control of the premises where the fire occurred. The majority, by this decision, judicially legislates in favor of negligent landowners, negligent contractors, and their personal liability insurance carriers, and against a non–negligent fireman doing his duty under the law.

Why, as a matter of logic, should a fireman not be able to recover in a situation such as this if the jury finds that the landowner and/or the contractor knew that there was a risk of vagrants setting fire to the premises during reconstruction and while flammable materials were piled up on the ground floor, and failed to post guards to prevent the fires being set?

The majority says that the fireman will be compensated by workers' compensation payments. But in cases of serious injuries, workers' compensation payments never fully recompense the injured victim. Moreover, the City, as the employer under the workers' compensation law, having paid out the workers' compensation benefits, has a right to reimbursement therefor, if the injured fireman can recover from any negligent party causing his injuries.

I would leave the law of Hawaii where it has been until now, that is, that persons in charge of premises are liable for injuries on their premises brought about by their negligence, and leave the parties in this case to try the factual issue of whether the fire in question was brought about by the negligence of the contractor and/or the landowner. I would not judicially legislate an exception to the ordinary rule with respect to premises liability, and disqualify firemen, doing the duty that their job requires of them, from recovery for their personal injuries caused by the negligence of those controlling the premises, nor would I exempt liability insurance carriers of those negligent premises controllers from paying firemen for injuries thus caused.

## CONCURRING OPINION OF BURNS, J.

I concur in the result only.

The name of the rule adopted in this case is not the Fireman's Rule. Its name is the Firefighter's Rule, formerly known as the Fireman's Rule.

The majority's opinion defines the Firefighter's Rule as follows:

[A] professional fire fighter may not recover damages from a private party for injuries he sustained during the course of putting out a fire even though the private party's negligence may have caused the fire and injury.

In my view, this definition is too broad. Its excessive breadth necessitates the "number of exceptions" referred to in the majority opinion.

I agree with the definition of the Firefighter's Rule stated as follows in Annotation, *Liability of Owner or Occupant of Premises to Police Officer Coming Thereon in Discharge of Officer's Duty*, 30 A.L.R. 4th 81, § 8, at 102 (1984):

> [The] negligence of the owner or occupier of premises in starting a fire provides no basis for holding the owner or occupier liable for injuries to a fireman incurred while fighting the fire[.]

This definition limits the Firefighter's Rule to absolving owners and occupiers of premises from liability for their negligent breach of their legal duty not to start such fires. It does not absolve them from liability for their negligent breach of their other legal duties. For example, it does not absolve them from liability for the negligent breach of their legal duty to warn firefighters of hidden dangers, i.e. dangers that the firefighter reasonably did not know about, the owner or occupier knew about, and the owner reasonably could have and should have warned the firefighter about.