PAUL E. DANIELSON, Justice, dissenting. The Fireman’s Rule, which is also | n known as the professional-rescuers doctrine, generally provides that a professional firefighter may not recover damages from a private party for injuries the fireman sustained during the course of putting out a fire even though the private party’s negligence may have caused the fire and injury. See Waggoner v. Troutman Oil Co., 320 Ark. 56, 894 S.W.2d 913 (1995). The doctrine was adopted by this court in Waggoner, wherein this court stated its persuasion by those courts’ decisions that justified the Rule on considerations of public policy.[1] See id. In the cases found persuasive by this court, we found “that the risk is one which the fireman has engaged to encounter by virtue of his employment and one which it is his duty to accept, and the person who negligently causes the fire has therefore not breached a duty owed the fireman.” Id. at 59, 894 S.W.2d at 915 (citing Buchanan v. Prickett & Son, Inc., 203 Neb. 684, 279 N.W.2d 855 (1979)). This court further quoted with approval the rational reasoning of the Supreme Court of Hawaii: The very purpose of the firefighting profession is to confront danger. Firefighters are hired, trained, and compensated to deal with dangerous situations that are often caused by negligent conduct or acts. [I]t offends public policy to say that a citizen invites private liability merely because he happens to created a need for those public services. Id. at 59-60, 894 S.W.2d at 915 (quoting Thomas v. Pang, 72 Haw. 191, 811 P.2d 821, 825 (1991)). According to the TDOT’s HELP Program Policy and Procedures Manual made a part of the record in the instant case, | ^[t]he purpose of the Tennessee HELP Program is to provide efficient response to highway incidents that impede traffic flow along the urban freeways in the State’s larger urban areas. The HELP Program’s function is to assist highway incident response agencies and the motoring public in keeping traffic moving and to clear the road. Tennessee Department of Transportation HELP Program Policy & Procedures Manual, 4 (Dec. 15, 2000). The Manual further sets forth the scope of responses to highway accidents or incidents: a. Provide fuel or other vehicle fluids need by stranded motorists b. Provide air for tires or assist in tire changing c. Provide minor repair items needed by stranded motorists d. Contact towing company or other party for assistance to motorist e. Contact appropriate law enforcement, fire or Emergency Medical Technicians (EMT) officials as warranted f. Placement of on board traffic control devices around incident or accident that cannot be moved from traffic lane g. Respond to on-site requests for assistance from law enforcement, fire, EMT and other transportation officials h. Direct traffic at incident scenes to increase traffic capacity i. Remove minor debris from roadway. Id. Considering the duties outlined above, I simply cannot say that the “very purpose” of Mr. Nowicki’s profession as a HELP worker was “to confront danger.” Waggoner, 320 Ark. at 59, 894 S.W.2d at 915 (quoting Thomas, 811 P.2d at 825). While there is undoubtedly some risk associated with assisting motorists on the interstates of this country, it would be fair to say that the risk is not as great as that faced by firefighters on each call. Unlike firefighters, the very nature of a HELP worker’s duties does not require him to face imminent danger a majority of the time; instead, HELP workers “are only peripherally involved in such hazards.” Krause v. U.S. Truck Co., Inc., 787 S.W.2d 708, 713 (Mo.1990). Because it is my opinion that the purpose of Mr. Nowicki’s occupation as a HELP worker was not to confront danger, I would reverse the circuit court’s grant of summary judgment and remand the matter to the circuit court. For the foregoing reasons, I respectfully dissent. HANNAH, C.J., joins. . As the majority correctly notes, the doctrine itself has already been adopted by this court; whether to retain the doctrine is in no way before this court. Neither party asks this court to abolish the doctrine, and this court is bound to follow prior case law under the doctrine of stare decisis, a policy designed to lend predictability and stability to the law. See Davis v. Parham, 362 Ark. 352, 208 S.W.3d 162 (2005).